## Case No. 10,723.

### In re PARKER et al.

[1 Pa. Law J. (1842) 370.]

Circuit Court, E. D. Pennsylvania.

BANKRUPTCY — DEBTS OF FIDUCIARY CHARACTER—DISCHARGE—WHO MAY OPPOSE.

[1. If a voluntary applicant for the benefit, &c., owe a debt created in consequence of defalcation as a public officer, or as an executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity, he cannot be discharged under the act, even though, besides the fiduciary debt, he may owe other debts not of a fiduciary character.]

[2. But the right to object to a discharge is given for the benefit of the party injured, whose interest it may be not to oppose the discharge. If, therefore, such party do not make objection, no other person can.]

The first section of the bankrupt law enacts, "that all persons whatsoever, &c., owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, &c., &c., or while acting in any other fiduciary capacity," shall be entitled, &c. The applicants in this case owed some debts which it was admitted were of an ordinary character, but among their debts was likewise one which had been created while acting in a fiduciary capacity. The clause of the act in question, has received different constructions. In one district it has been held that where a debtor owes fiduciary and other debts, he may receive a limited discharge, i. e., a discharge from all debts except those of a fiduciary character. In another district, that though a certificate, general in its terms, would be given, yet that even such a discharge would not be a bar to a suit on the fiduciary debt. In consequence of the obscurity of the language of the enactment, and this diversity of decision, his honor, Judge Randall, adjourned the question into the circuit court in the following form: "Admitting the debt to be fiduciary, are the petitioners entitled to the benefit of the act?" [Case No. 10,722.]

The case was argued, at length, by H. D. Gilpin, Esq., against the right to a discharge, and by Mr. McIlvaine on the other side. The latter gentleman, relying principally on the words of the act [of 1841 (5 Stat. 440)], "owing debts which shall not have been contracted, &c., while in a fiduciary capacity," contended that as the petitioner owed debts of an ordinary sort as

well as one of a fiduciary character, that their case came within the language of the act, and that they were accordingly entitled to a discharge. But the court decided otherwise.

NOTE. In Case of McCrea [unreported], Judge Randall stated that the court considered in the foregoing case, that the party injured was the person for whose benefit this provision was made, and that therefore such party was the only one who could oppose the application: that, accordingly, if thinking it more for his benefit to waive opposition, such party chose to do so, other creditors could not make the objection.

## Case No. 10,724.

### In re PARKER et al.

[5 Sawy. 58; 1 18 N. B. R. 43.]

District Court, D. Oregon. Jan. 12, 1878.

BANKRUPTCY — EXEMPTIONS — OREGON STATUTE—WAGON AND TEAM—EXCHANGE.

1. A bankrupt is not entitled to a wagon and team as exempt from the operation of the bankrupt act [of 1867 (14 Stat. 517)], under section 14 thereof, and section 279, subd. 3, of the Oregon Civil Code, unless he personally follows some trade, occupation or profession, to the

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

carrying on of which such wagon and team is necessary; nor unless he habitually earns his living by such trade, occupation or profession.

2. The business of mere buying and selling or directing or employing the labor of others, is not a trade, occupation or profession within the statute; the statute was made for the benefit of those who live by their own labor and require therefor the use of some of the articles enumerated therein.

3. An insolvent person exchanged five hundred dollars' worth of wheat for a wagon and team, with a view to claiming the latter as exempt from the operation of the bankrupt act. *Held*, that under sections 5129 and 5046 of the bankrupt act, the transaction was void, and the title to the wheat vested in the assignee. *Semble*, that the assignee may elect to take the wagon and team as the price or value of the wheat, and thereby affirm the exchange.

In bankruptcy. Exceptions to assignee's report setting apart property to the bankrupt.

R. S. Strahan, for bankrupt.

M. W. Fechheimer, for assignee.

DEADY, District Judge. On June 5, 1877, Allen Parker, of Albany, was adjudged a bankrupt upon his own petition filed upon the same day. The bankrupt excepts to the report of the assignee concerning property set apart under section 14 of the bankrupt act, because there was not set apart to him a certain wagon, team and harness, belonging to the estate, of the value of five hundred dollars. The bankrupt alleges that at the date of the adjudication "he was engaged in the business of farming, hauling and storing grain and general jobbing and hauling in Linn county, * * * and that by said business he habitually earned his living; and that a wagon and team were and are necessary to enable him to carry on his said occupations;" that at the date aforesaid he "owned a wagon, team and harness" of the value of five hundred dollars; and then and still uses the same in his business by which he habitually earned and now earns his living, and that the same was and is necessary for that purpose. The assignee denies that the bankrupt at the date of the adjudication was engaged in any business other than that of a warehouseman as a member of the firm of Parker & Morris, and alleges that the bankrupt a few days before filing his petition in bankruptcy, and with the intent to commit a fraud upon the bankrupt act, purchased said wagon and team with the design of claiming it as exempt under the bankrupt act.

From the evidence it satisfactorily appears that at the time of the adjudication the bankrupt owned a farm near Albany, and was also a partner in a wheat warehouse at that place. In the fall of 1876 he rented the farm, and from thenceforth until the filing of his petition in bankruptcy his only business was that of a warehouseman. In March, 1877, the bankrupt was aware of his insolvency, and contemplated going into bankruptcy unless an arrangement could be made with his creditors. About May 1, the bankrupt, under advice of counsel, purchased the property in question from his father-in-law with wheat due him in the October following, for the express purpose and with the design of claiming the same as exempt from the operation of the bankrupt act. It also appears that after the purchase of the team it was used more or less by the adult son of the bankrupt in teaming about Albany, he receiving his board from his father and allowing him two dollars per day of the proceeds, which were about three dollars, for the use of the same.

Under said section 14 the assignee set apart to the bankrupt about three hundred dollars worth of property; and it is now claimed that this wagon and team are also exempt under the provision of said section, which excepts from the operation of the act all property exempt from execution by the law of this state; namely, section 279, subd. 3, of the Oregon Civil Code, which, among other things, provides that "the tools, implements, apparatus, team, vehicle, harness, or library necessary to enable any person to carry on the trade, occupation, or profession by which such person habitually earns his living, to the value of four hundred dollars," shall be exempt from execution.

In any view of the matter it is plain that all this property is not exempt from the operation of the act, because it is of the value of five hundred dollars—one hundred dollars more than the law allows. But if the bankrupt is entitled to a team, harness and wagon of the value of four hundred dollars, and there is none belonging to his estate of only that value, I suppose so much of this as does not exceed that sum may be set apart to him. Upon these facts does it appear that the bankrupt, at or shortly before the filing of his petition in bankruptcy, was a person who habitually earned his living at an occupation, which the possession of this team was necessary to enable him to follow or "carry on?" In an able argument, citing numerous authorities on the subject of exemptions, counsel for the bankrupt maintains that he was. But none of these cases arose under a statute like that of Oregon. Under this statute the person claiming the exemption must habitually, not occasionally, now and then, earn his living, not merely some of it, by some trade, occupation, or profession. The word business is not in the statute. In this respect it does not appear to have been made for the benefit of those who do not live by their own labor, and therefore do not require the use of the particular articles enumerated therein. The mere business of buying and selling, or directing or employing the labor of others, does not appear to be within its scope. The pursuit must be one which in some way involves the personal labor and skill of the debtor, and the article claimed as exempt must be something which is necessary—suitable and convenient, to say the least—to enable him to follow and carry it on.

In this case the debtor's occupation was that of a warehouseman. True, he also owned a farm, but he was not engaged in farming since January 1, 1877; and it is quiet doubtful whether he had followed the occupation of a farmer for the three years in which he had been engaged in the business of a warehouseman. Now, while a warehouseman may own and employ teams in hauling wheat to and from his warehouse, or otherwise, it is not necessary for him to do so to enable him to carry on such business. The business of a warehouseman consists in receiving, storing and delivering grain—not in teaming. A lawyer, doctor or minister may own teams and employ them, but that fact does not of itself make either of them a teamster, or a person who habitually earns his living as a teamster and by means of a team. Nor do I thing the business of a warehouseman is a "trade, occupation, or profession" within the meaning of the statute, so as to entitle a person engaged in it to claim any tools, implements, or other things as exempt from execution. His warehouse and grounds are the things used in carrying on his business, and they are not within the category of property which may be claimed as exempt. The bankrupt simply owned this team, and hired it to his adult son, who gave a certain share of his earnings with it for the use of it. He did not thereby become a teamster, although the profits derived from such ownership and employment may have been employed to the support of his family. And if upon the evidence it should be concluded that the bankrupt, instead of hiring this team to his son, hired the son to drive the team, the difference would not change the legal effect of the transaction; still the bankrupt would not be a teamster, or habitually earn his living by the use of a team.

In Brusie v. Griffith, 34 Cal. 302, a case in its leading features like this, and arising under a statute very similar to that of Oregon, it was held that "in the sense of the statute, one is a teamster who is engaged, with his own team or teams, in the business of teaming; that is to say, in the business of hauling freight for other parties for a consideration, by which he habitually supports himself and family, if he has one. While he need not, perhaps, drive his team in person, yet he must be personally engaged in the business of teaming habitually, and for the purpose of making a living by that business. If a carpenter or other mechanic, who occupies his time in labor at his trade, purchases a team or teams, and also carries on the business of teaming by the employment of others, he does not thereby become a teamster in the sense of the statute. So of the miner, farmer, doctor, and minister." I do not think the bankrupt is entitled to the exemption under the statute.

It is also claimed by the assignee that the purchase of this property under the circumstances was a fraud upon the bankrupt act (Rev. St. § 5129), and therefore void; citing In re Wright [Case No. 18,067]; In re Boothroyd [Id. 1,652]; In re Lammer [Id. 8,031]. There is no doubt but that the transaction comes within the prohibition contained in said section. At the time of the purchase the bankrupt was insolvent, and it was made with a view of preventing the wheat exchanged for the team from coming to his assignee and to prevent the same from being distributed under the bankrupt act. By exchanging the former for the latter, which he hoped to retain as exempt from the operation of the act he intended and expected to prevent five hundred dollars of his property from coming to his assignee in bankruptcy, and thereby deprive his creditors of that amount to his own gain. But the transaction being void because contrary to section 5129 aforesaid, it would follow that no title or interest passed by it, and therefore the wheat remained the property of the bankrupt and passed to his assignee, as provided in section 3046, Rev. St., which declares that "all property conveyed by the bankrupt in fraud of his creditors" shall vest in the assignee. And it may be that the assignee may affirm the exchange by electing to take the property received by the bankrupt in exchange for the wheat, as the price or value thereof. The exception to the action and report of the assignee is overruled.

[Subsequently a mortgage given by Allen Parker to one Irvine was adjudged a fraudulent preference. 11 Fed. 397.]