JULIUS, Respondent, vs. DRUCKREY, Appellant.

*March 6—April 3, 1934.*

For the appellant there were briefs by *C. B. Dillett* and *Winter & Winter,* all of Shawano, and oral argument by *Mr. Dillett* and *Mr. Paul J. Winter.*

For the respondent there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

FAIRCHILD, J. The judgment under which the execution was issued was a valid judgment. *Shawano Finance Corp. v. Julius, ante,* p. 637, 254 N. W. 355. Therefore, the proceedings which attempted to vacate the judgment originally entered in this case were without effect, and the findings, conclusions, and judgment determining whether or not this automobile was exempt are now before us on appeal. No question arises as to the value of the automobile. It is agreed that its value is less than four hundred dollars, and the only dispute is in relation to whether the automobile was used in the trade or business of respondent within the meaning of the statute.

Sec. 272.18 (6), Stats., under which the respondent Julius claims exemption of his automobile, provides that the following personalty shall be exempt from execution:

"Two cows, ten swine, fifty chickens, one yoke of oxen and one horse or mule, or in lieu of one yoke of oxen and a horse or mule, two horses or two mules, or *any automobile used or kept for the purpose of carrying on the debtor's trade or business,* not exceeding four hundred dollars in value, ten sheep, and the wool from the same, either in the raw material or manufactured into yarn or cloth; the necessary food for all the stock mentioned in this section for one year's support, either provided or growing or both, as the debtor may choose; also one wagon, cart or dray, one sleigh, one plow, one drag and other farming utensils, including tackle for teams, not exceeding two hundred dollars in value."

The immediate question is whether the provisions of this statute are sufficiently broad to cover the automobile involved in this case.

The respondent some years ago suffered an injury to his foot which has severely crippled him. The record shows considerable conflict in the evidence concerning the extent of his incapacity. There is testimony, which he disputes, to the effect that he frequently engaged in driving a team, in hauling timbers, and in sawing and splitting wood. It was also testified that he was well able to walk to his place of work located approximately one-half mile from his home, and that he frequently did so. Respondent admits walking to work, but only at the expense of considerable pain and difficulty, and states that he did so only because his car had been seized. He insists that he purchased the car for the primary purpose of his transportation to and from his place of work. He testifies as follows:

"I was supposed to get $35 a month. . . . I bought that car for my business and to take me to work and make my

living with that car. Most of the time after I got to Neopit it was used to take me to work and bring me back and bring my meal. . . . Since they took the car away I have to walk. That does not affect me very good. My leg bothers me too much. If I walk too much it hurts me. If I no got that plate, I no can walk at all. . . . Now since this car has been taken away from me I have had to pay money out for other people hauling me to and from my work. It cost me $2 a trip. We made four or five trips to Shawano. If I hired somebody to take me to work and bring me home, all the time for work, I have to starve. I never got enough money left to live. If I hired a man to take me it would cost twenty-five cents. I figure I have been out at least fifty cents a day for the drive my wife made to bring my dinner for me and so on since I lost the car. . . . I walk to work now. If it didn't bother me I wouldn't say anything. . . . I bought the car for business. I can't afford to buy a pleasure car. When I bought it, I expected to use it most for to take me to work. At the time I bought it I wasn't working at Neopit. I was working at camp. The reason I bought it then was that I couldn't stay at camp all the time and I no can afford to pay a man $5 to bring me home."

Further evidence pertinent to the case is that he was generally driven to and from work by his wife or some other person and his wife frequently used the car to take him his dinner. Also it is established that the car was used at least four times as much for pleasure or domestic purposes as it was for transporting him to and from work. To summarize, the situation presented to the trial court was as follows: The automobile was frequently used to transport respondent to and from his work, but the evidence is in conflict as to how often he walked to work even when transportation was available. Clearly, it was not an absolute necessity for that purpose, but again the evidence is conflicting as to the extent to which it was reasonably necessary. It was used predominantly for domestic and pleasure purposes rather than for transportation to and from work.

On this factual situation the trial court held that the automobile was not kept or used for the purpose of carrying on the trade or business of the respondent within the meaning of the statute and therefore was not exempt from execution. The trial court, however, gave no indication of the basis that it used in arriving at its conclusion. Any one of four theories may have been adopted by it: (1) That an automobile used in driving to and from a place of work is not "used or kept for the purpose of carrying on the debtor's trade or business" within the meaning of the statute; (2) that such use would not bring the automobile within the statute unless it were absolutely indispensable to the owner's pursuit of his occupation; (3) that the predominant use to which the automobile is put determines whether or not it shall be exempt; (4) that even if the statute be construed as including an automobile used to transport one to and from his place of work, and interpreted as intending that such use need not be absolutely necessary so long as it is reasonably necessary and that the fact that it is used more for pleasure than business does not prevent the owner from claiming exemption, nevertheless, under the evidence as presented to and weighed by the trial court in its capacity as a trier of facts, it is found that respondent's automobile, even under this liberal construction of the statute, was not subject to exemption.

In the absence of any indication by the trial court as to which one of these it based its decision on, it becomes necessary to inquire into the soundness of all four theories. If a proper interpretation of the statute supports all of them, the original judgment of the trial court holding that the automobile is not exempt must be affirmed. If, however, any one of them violates the meaning of the statute, interpreted in the light of its language and spirit, the cause must be remanded for more specific findings by the trial court. Sec. 270.33 (1), Stats.

Before discussing the specific questions involved, a few general principles of statutory construction may be called to attention. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction. *Gilbert v. Dutruit,* 91 Wis. 661, 65 N. W. 511. It is only when there exists an obscurity, ambiguity, or other fault of expression that it becomes necessary to interpret the law in order to discover its true meaning. While the primary purpose of interpretation and construction is to ascertain and give effect to the intention of the legislature, it must be borne in mind that this intention and meaning is to be determined, if possible, primarily from the language of the statute itself. However, where this language is capable of more than one interpretation, it must be read in a sense which harmonizes with the subject matter and the general purpose and object of the statute. The general design and purpose of the law is to be kept in view and the statute given a fair and reasonable construction with a view to effecting its purpose and object. *Lawrence v. Vilas,* 20 Wis. *381; *Howard v. Mansfield,* 30 Wis. 75; *Wisconsin Industrial School v. Clark County,* 103 Wis. 651, 79 N. W. 422; *State ex rel. Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 137 Wis 80, 117 N. W. 846; *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 128 N. W. 1041; *Nordean v. Minneapolis, St. P. & S. S. M. R. Co.* 148 Wis. 627, 135 N. W. 150; *State ex rel. Hayden v. Arnold,* 151 Wis. 19, 138 N. W. 78.

It is well settled that exemption laws must have a liberal construction, within the limits contemplated by the legislature, so as to secure their full benefit to the debtor, in order to advance the humane purpose of preserving to the unfortunate or improvident debtor and his family the means of obtaining a livelihood and thus prevent him from becoming a charge upon the public. 11 Ruling Case Law, p. 492, § 4;

*Ames v. Martin,* 6 Wis. *361; *Gilman v. Williams,* 7 Wis. *329; *Newton v. Howe,* 29 Wis. 531; *Russell v. Lennon,* 39 Wis. 570; *Below v. Robbins,* 76 Wis. 600, 45 N. W. 416. In the *Russell Case* the court said:

"The principle of all exemption laws in this state is very clearly expressed in the constitution itself. 'The privilege of the debtor to enjoy the necessary comforts of life should be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale,' etc. This principle makes all constitutional exemption a personal privilege of each debtor, secured to him individually, not in mere benevolence only, but also in the interest of the state in the personal well-being of each of its citizens. *Maxwell v. Reed,* 7 Wis. *582; *Bull v. Conroe,* 13 Wis. *233. And the statutes of exemption appear to be framed on this principle. They go to secure the necessary comforts of life to families by exemption to heads of families; . . ."

The kinds of personalty set forth as exempt in sec. 272.18 (6), Stats., show the legislative conformity to the purpose and spirit involved in exemption laws as expressed in the language just quoted. Conditions have changed since this exemption statute was enacted. The automobile, in a great many instances, has become as definitely an essential and integral part of our lives as was the team of horses, the span of mules, or the yoke of oxen in earlier days. It would not have been surprising if the legislature, recognizing this, had, when in 1917 they amended the statute to include automobiles, put the automobile in the same class as the animals mentioned, and allowed exemption of an automobile without reference to whether or not it was used or kept for business purposes. However, they did not see fit to do so, and therefore it becomes necessary for us to determine whether, under the circumstances of this case, there is any reasonable ground for holding that the respondent's car is exempt under the statute as it now reads.

In the light of the general principles set forth, the first question is whether the phrase "used or kept for the purpose of carrying on the debtor's trade or business" can, under any circumstances, be interpreted as covering an automobile used in driving to and from a place of work? It has been held that automobiles used by physicians and insurance agents are used in the business. 28 A. L. R. 74; *Webb v. Lacarde,* 17 La. App. 21, 134 South. 292, 135 South. 262; *Lames v. Armstrong,* 162 Iowa, 327, 144 N. W. 1, 49 L. R. A. N. s. 691. *Contra, Morris-Wilson Buick Co. v. Robertson* (La. App.), 146 South. 339. In *Waterhouse v. Johnson,* 194 Iowa, 343, 189 N. W. 669, it was held that where a laborer was engaged in laying tile drain on the farms of others and used his automobile to transport himself and his tools between his home and his work, the distance between which varied from two to twelve miles, his automobile was exempt under the statute.

In all these cases the proper test to apply, in view of the primary purpose of the statute, is whether an automobile is necessary for the owner to pursue successfully his vocation. If it is, it is reasonable to presume, unless the specific language of the statute forbids such a presumption, that the legislature intended to exempt it. It is not unreasonable to hold that a laborer who, because of circumstances, is unable to reach his place of occupation, in order to pursue successfully that occupation, without the aid of an automobile, is in the same position in the eyes of the law as the physician, insurance agent, and layer of tile. And certainly the threats to earning capacity which the exemption statute seeks to avoid is as great in the one case as in the other.

We do not say that in every case where an automobile is used for such a purpose that it should be exempt. The law cannot be used as a shield to allow one to surround himself with luxuries and unnecessary conveniences at the ex-

pense of his creditors. *Tanner v. Billings,* 18 Wis. *163. Such extension of the exemption laws would do violence to what the legislature clearly intended when it qualified the language allowing exemption of automobiles by requiring that they be used in the business, since it would allow any person to claim his car as exempt by the mere subterfuge of an occasional use in connection with his business. But where the owner would find it impossible or impracticable to do his work without the aid of this conveyance, whether that aid were invoked after he arrived at his place of operation or whether he required it in transporting himself thereto, we cannot say that a reasonable interpretation of the statute would exclude from exemption such a conveyance.

The second question is whether, if our first proposition be accepted, it is necessary that the automobile be absolutely indispensable to one's work or whether it need be only reasonably essential? It cannot be presumed, in the absence of its express statement to that effect, that a legislature ever intended that the use of the words "used or kept for the purpose of carrying on the debtor's trade or business" should be construed as meaning "absolutely necessary" or "indispensable." That the words should be construed as meaning "reasonably necessary," "convenient," or "suitable" has been established by a number of cases. *Childers v. Brown,* 81 Oreg. 1, 158 Pac. 166; *Stewart v. McClung,* 12 Oreg. 431, 8 Pac. 447; *State v. Young,* 74 Oreg. 399, 145 Pac. 647; *In re Parker,* 5 Sawy. 58, Fed. Cas. No. 10,724; 12 Am. & Eng. Ency. of Law (2d ed.), 132; 25 Corp. Jur. p. 61, §100. In the present case, if the trial judge accepted as true the statement of respondent that the injury to his foot handicapped him to such an extent that it took him from twenty to thirty minutes to walk one-half mile to work and caused him severe pain constantly when he walked, and that

it was impossible for him, out of the small income which he had, to hire others to transport him, the court could not hold that the automobile owned by respondent was not used for the purposes of his business merely because he was able, in spite of the pain and hardship involved, to walk to work if forced to do so.

The third question is whether the fact that a machine, found to be within the statute from all other standpoints, was used more for purposes outside of those covered by the statute than for those which do come within its terms, is sufficient to render the statute inapplicable? If the automobile was purchased for the primary purpose of using it in the business, if it is reasonably necessary to that business, and if it is in fact used in that business as intended by the owner and as contemplated by the statute, the mere fact that it may be used for other purposes during periods when it is not needed in the business would seem to be immaterial, whether that extraneous use is slight or considerable. To hold otherwise would seriously limit the usefulness of many articles and appliances, and cause unnecessary hardship and restrictions, restrictions which would serve only to injure the owner and would be of no benefit to the creditor. *Childers v. Brown, supra;* 12 Am. & Eng. Ency. of Law (2d ed.), 132; *Stanton v. French,* 91 Cal. 274, 27 Pac. 657; 11 Ruling Case Law, p. 519, § 30.

There is testimony furnishing evidence in the instant case on which the trial court could find, under the interpretation of the statute to which we have just given expression, that respondent's automobile was exempt from execution. There is likewise evidence on which it might reach a contrary opinion. If the court, adopting the above interpretation of the statute, were to find, on the basis of the evidence presented, that the respondent's car was not so used or kept as to be a

subject for exemption, that finding would control the case. However, because of the impossibility of ascertaining from the court's findings of fact and conclusions of law whether this was the reason underlying the court's holding, there must be a retrial of the issues.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings as indicated in the opinion.