**In the Matter of Don Orriel NEIS, Debtor.**

Bankruptcy No. LM7-81-00423.

United States Bankruptcy Court, W. D. Wisconsin.

Feb. 11, 1982.

Smyth, Sauer, Becker, Lynch & Smyth, Ltd. by William J. Sauer, La Crosse, Wis., for Trane Employees Credit Union.

Thompson, Parke & Heim, Ltd. by Richard C. Thompson, La Crosse, Wis., for Raymond Mook, Sr. and Anna M. Mook.

Johns, Flaherty & Gillette, S. C. by Galen W. Pittman, La Crosse, Wis., for Don Orriel Neis, debtor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

At the trial in this matter held September 22, 1981, the following facts were established. In 1972, Don and Andrea Neis, as joint tenants, purchased a house at 4062 Glenhaven Drive, La Crosse, Wisconsin ("the Glenhaven house"). Beginning in March, 1979, Don Neis divided his time between the Glenhaven house and a room at 1117 South Fifth Street because he and his wife were having marital problems. For the period prior to April 2, 1979, Mr. Neis lived at the Glenhaven house most of the time and kept his belongings there. Andrea Neis filed for divorce on April 2, 1979.

Mr. Neis then removed his belongings from the Glenhaven house and moved to an apartment at 1638 Bainsbridge, La Crosse, Wisconsin. On July 5, 1979, a temporary order in the divorce proceeding provided that Mr. Neis "vacate the residence of the parties immediately." In September, 1979, Mr. Neis moved again to a single-family dwelling that he owned at 1107 Wells Street, Onalaska, Wisconsin.

On June 11, 1980, a judgment was docketed against Don Neis on behalf of Cameron, Nix, Collins and Quillin, Ltd. ("Cameron"). On June 17, 1980, a judgment was docketed against Don Neis on behalf of Raymond and Anna Mook ("the Mooks"). Trane Employee's Credit Union ("Trane") docketed a third judgment against Neis on July 16, 1980. A divorce was granted to Don and Andrea Neis on November 26, 1980. The divorce court ordered the sale of the Glenhaven house. The order called for even division of the proceeds after allowing certain adjustments and credits. Andrea Neis (Mekkelson) moved out of the Glenhaven house on January 15, 1981. On February 1, 1981, Don Neis moved back to the Glenhaven house to protect it from vandalism while awaiting its sale.

Don Neis filed a chapter 7 bankruptcy proceeding on March 6, 1981. On March 31, 1981, Don Neis, Andrea Neis (Mekkelson), Trane, Cameron and Raymond and Anna Mook entered into an agreement providing for partial release of the judgment liens to allow the Glenhaven property to be sold free and clear of all liens. The agreement created an escrow fund for the net proceeds of the sale of the house. No money is to be disbursed until so ordered by the bankruptcy court.

The debtor, Don Neis, claims his equity in the Glenhaven house is exempt as homestead under Wis.Stats. § 815.20. Trane, Cameron and Raymond and Anna Mook object to the homestead exemption claiming Don Neis had abandoned the property as his homestead. At the trial, Don Neis testified that he did not intend to abandon his homestead rights.

The sole issue to be determined is whether the property at 4062 Glenhaven was the homestead of Don Neis at the time the judgments were docketed. The answer must be based on Wisconsin law of homesteads.

Wis.Stats. § 815.20 provides that:

(1) An exempt homestead ... selected by a resident owner and occupied by him shall be exempt from execution, from the lien of every judgment and from liability for the debts of such owner to the amount of $25,000, .... Such exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $25,000, while held, with the intention to procure another homestead therewith, for 2 years.

As the statute makes clear, a homestead must be occupied by an owner or it cannot be characterized as exempt. The legislature has recognized, however, that in certain instances an owner may be prevented from occupying his or her homestead. In those cases where the circumstances do not permit actual residence, the exemption may be allowed nonetheless. *Herrick v. Graves*, 16 Wis. 163, 172 (1862) discusses some of these circumstances.

For the statute makes occupancy and possession by the owner an essential feature or characteristic of a homestead; and it would be a solecism to say that a man's homestead was in one place, when, in truth and fact, he resided elsewhere. From this it must not be assumed that a party would lose his homestead when he ceased to actually live upon it with his family. This, we think, is too narrow a construction of the statute. And hence we have held, in a case decided at this term, that a party would not forfeit the exemption on being absent from home a season, traveling with his family, ... or should be prevented, by some temporary necessity, from occupying his homestead for a time with his family.

■ Generally, the removal must be temporary and there must be an intention to reoccupy the premises. The duration of the removal is of no importance.

The statute does not limit the measure of removal, but it does the kind of removal. Absence is licensed without limit, so that the homestead remain the homestead, for the exemption to operate upon. As suggested by Paine, J., in *Re Phelan*, the owner may visit the antipodes, without forfeiture of his exemption, so that his purpose be essentially temporary, *animo revertendi* to his homestead as his homestead, and not of indefinite absence. *Re Miller's Estate*, 3 Rawle, 312. But if his removal be *animo manendi*, or to live elsewhere indefinitely, so that he could acquire another home, the exemption of his former homestead ceases, because it ceases to be his homestead. *Jarvais v. Moe*, 38 Wis. 440, 445–46 (1875).

■ In deciding whether an absence is temporary, a court will consider intent of the person claiming the exemption. However, a claimant's testimony on this issue will not be determinative if the statement concerning intent is contradicted by his or her actions. This issue was addressed by the Wisconsin Supreme Court in *Hauser v. Schauer*, 215 Wis. 75, 79, 254 N.W. 343 (1934).

While it is always proper for one claiming a homestead exemption to testify as to what his intentions were at the time of removing from his homestead, such professions are of little force or effect when they are of an *ex post facto* character and made after intervening occurrences have made such professions advantageous.

■ In applying the somewhat restrictive statutory language to particular fact situations, Wisconsin courts have tended to liberally construe the statute in favor of debtors. The Wisconsin Supreme Court explained the rationale for liberal construction in *Schwanz v. Teper*, 66 Wis.2d 157, 163, 223 N.W.2d 896 (1974).

There is a strong public policy in this state to protect the homestead exemption.... Because of this public policy,

homestead statutes are liberally construed in favor of the debtor, ... and homestead rights are preferred over the rights of creditors.

The Wisconsin Court of Appeals recently stated that "homestead statutes are remedial legislation and, as such, are to be liberally construed in favor of the debtor." *State Central Credit Union v. Bigus*, 101 Wis.2d 237, 241, 304 N.W.2d 148 (Ct.App.1981).

This policy of liberal construction in favor of one claiming a homestead exemption is nowhere more apparent than in the case of *Eloff v. Riesch*, 14 Wis.2d 519, 111 N.W.2d 578 (1961). In *Eloff*, Edward Riesch, the joint owner of a duplex, was allowed to claim a homestead exemption in spite of the fact that he voluntarily left home and never returned. A judgment lien had been docketed against Riesch, and it was claimed that his interest ceased to be exempt when he left home, thus allowing the lien to attach. Sometime after Riesch left home, he quit-claimed his interest in the property to his wife, Rosemary. In an action seeking the removal of the judgment lien as a cloud on her title, Rosemary claimed that Edward had not abandoned his homestead right, and therefore, the lien had not attached to Edward's interest when the judgment was docketed.

Concededly Edward did not personally occupy the premises after March, 1956. It does not appear that his leaving was excused by any conduct of his wife; that there were any divorce proceedings, nor that his obligations to provide for his wife and children were altered in any way. Nor does it appear that he made another home available to them which they declined to occupy. To the extent of his interest in the property, he continued to help provide them with a home. Under these circumstances, continued recognition of the exemption would tend to fulfil the purpose of the exemption statute.

. . . .

Exemption laws must have a liberal construction to effect their purpose. *Julius v. Druckrey* (1934), 214 Wis. 643, 649, 254

N.W. 358. In light of this principle, we conclude that the statutory requirement of residence and occupancy in order to claim the exemption was fulfilled as to Edward by residence and occupancy by his family under the circumstances of this case, and that his interest in the property did not lose its exempt status. *Eloff v. Riesch*, 14 Wis.2d 519, 524, 111 N.W.2d 578 (1961).

*Eloff* was relied on in *In re Bleiler*, Nos. 73–BK–696, 73–BK–697 (W.D.Wis. March 11, 1974). In *Bleiler*, the trustee objected to the homestead exemption claimed by Clara Bleiler because she did not occupy the home in question on the date of filing of her bankruptcy petition. Clara and her husband testified that marital discord caused her to leave her homestead. She first went to her sister's house in Poynette and then moved to St. Paul, Minnesota, where she found employment. The court in *Bleiler* stated that exemption laws must be liberally construed and found that marital difficulties and financial problems made Clara Bleiler's departure involuntary. The court allowed her claim of a homestead exemption and Bleiler was permitted to exempt the proceeds from the sale of the home in question.

In *In re Lumb*, 12 B.R. 862 (E.D.Wis. July 23, 1981), a case which is currently being appealed to the District Court, the debtor was ordered to leave his house by the Family Court Commissioner who heard his divorce case. The court decided that an owner of residential property does not lose his Wisconsin homestead exemption by complying with a court order to leave home. Noting that the Wisconsin Supreme Court had allowed an exemption in the *Eloff* case, where Riesch had left home voluntarily, the court in *Lumb* stated that where a debtor is essentially driven from his home by a divorce court order, there can be no forfeiture of the statutory right to claim a Wisconsin homestead exemption.

In *In re Beilke*, No. 71–B–2423 (E.D.Wis. March 20, 1972), Roy Beilke was ordered to vacate his home after his wife initiated a divorce action. He then lived in rented rooms at several locations. Beilke testified that he did not intend to abandon his homestead rights. The court in *Beilke* reasoned that Beilke's homestead exemption should be allowed because the divorce court had intended to preserve it. While the reasoning in *Beilke* is not representative of a traditional analysis of the homestead abandonment issue, it, nevertheless, is indicative of the liberal construction afforded claimants under the Wisconsin homestead exemption statutes.

■ Property not exempt as homestead when a judgment is docketed, is subject to a judgment lien on the property. *Upman v. Second Ward Bank*, 15 Wis. 492 (1862); *Lueptow v. Guptill*, 56 Wis.2d 396, 202 N.W.2d 255 (1972). If Don Neis was not prevented from occupying the Glenhaven house in June and July of 1980 when their judgments were docketed, then Cameron, Trane and the Mooks each have a lien on Don Neis' share of the net proceeds from the sale of the house. As has been demonstrated by the cases set out above, Wisconsin has adopted a generous standard for the prevention of occupancy in homestead cases. Neis' departure in March due to marital discord and his being ordered by the Family Court Commissioner to remove himself from the property in July are, taken together, sufficient under the Wisconsin cases to prevent his occupancy of his homestead. The *Eloff* and *Bleiler* cases preserved homesteads on far less. Therefore, although it appears that the extensions to the homestead doctrine which have been countenanced under the prior decisions go far beyond the original concept of a homestead protected for the purpose of providing shelter and provisions, the Wisconsin law compels the decision that the Glenhaven house was the homestead of Don Neis at the time judgments in favor of Cameron, Trane and the Mooks were docketed. Judgment may be entered accordingly.