In the Matter of Don Orriel
NEIS, Debtor.

No. 82–C–277–C.

United States District Court,
W.D. Wisconsin.

March 2, 1983.

William Sauer, Smyth, Sauer, Becker, Lynch & Smyth, Ltd., La Crosse, Wis., for creditors Trane Employees Credit Union, Raymond Mook, Sr. and Anna Mook.

Galen W. Pittman, Johns, Flaherty & Gillette, S.C., La Crosse, Wis., for debtor.

Jerry Armstrong, Madison, Wis., Trustee.

## OPINION AND ORDER

BARBARA B. CRABB, Chief Judge.

This is an appeal from a final judgment of the Bankruptcy Court for the Western District of Wisconsin. 17 B.R. 656. Jurisdiction exists under 28 U.S.C. § 1334.[1] The appellants, holders of judgment liens against the bankrupt, Don Neis, seek reversal of the bankruptcy court's determination that certain property on Glenhaven Drive in LaCrosse, Wisconsin, was Neis's "homestead" at the time their judgments were docketed, and that it therefore qualified for the homestead exemption available to Neis under Wisconsin statutes.

*Findings Of Fact By The Bankruptcy Court*

After a trial in this matter, the bankruptcy judge issued a memorandum decision containing the following findings of fact:

---

1. Pub.L. No. 95–598 Title II, § 238(a), 92 Stat. 2668 (1978) amended 28 U.S.C. § 1334 so that effective April 1, 1984, the district courts will "have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts." Title IV, § 405 of the same act provided that during the interim period, the jurisdiction of the district courts shall be the same as that granted under the amendment made by § 238.

In 1972, Don and Andrea Neis, as joint tenants, purchased a house at 4062 Glenhaven Drive, La Crosse, Wisconsin ("the Glenhaven house"). Beginning in March, 1979, Don Neis divided his time between the Glenhaven house and a room at 1117 South Fifth Street because he and his wife were having marital problems. For the period prior to April 2, 1979, Mr. Neis lived at the Glenhaven house most of the time and kept his belongings there. Andrea Neis filed for divorce on April 2, 1979. Mr. Neis then removed his belongings from the Glenhaven house and moved to an apartment at 1638 Bainsbridge, La Crosse, Wisconsin. On July 5, 1979, a temporary order in the divorce proceeding provided that Mr. Neis "vacate the residence of the parties immediately." In September, 1979, Mr. Neis moved again to a single-family dwelling that he owned at 1107 Wells Street, Onalaska, Wisconsin.

On June 11, 1980, a judgment was docketed against Don Neis on behalf of Cameron, Nix, Collins and Quillin, Ltd. ("Cameron"). On June 17, 1980, a judgment was docketed against Don Neis on behalf of Raymond and Anna Mook ("the Mooks"). Trane Employee's Credit Union ("Trane") docketed a third judgment against Neis on July 16, 1980. A divorce was granted to Don and Andrea Neis on November 26, 1980. The divorce court ordered the sale of the Glenhaven house. The order called for even division of the proceeds after allowing certain adjustments and credits. Andrea Neis (Mekkelson) moved out of the Glenhaven house on January 15, 1981. On February 1, 1981, Don Neis moved back to the Glen-

haven house to protect it from vandalism while awaiting its sale.

Don Neis filed a chapter 7 bankruptcy proceeding on March 6, 1981. On March 31, 1981, Don Neis, Andrea Neis (Mekkelson), Trane, Cameron and Raymond and Anna Mook entered into an agreement providing for partial release of the judgment liens to allow the Glenhaven property to be sold free and clear of all liens. The agreement created an escrow fund for the net proceeds of the sale of the house. No money is to be disbursed until so ordered by the bankruptcy court.

The debtor, Don Neis, claims his equity in the Glenhaven house is exempt as homestead under Wis.Stats. § 815.20. Trane, Cameron and Raymond and Anna Mook object to the homestead exemption claiming Don Neis had abandoned the property as his homestead. At the trial, Don Neis testified that he did not intend to abandon his homestead rights.

█ I have reviewed the record and do not find these facts to be clearly erroneous; therefore, they may not be disturbed. Rule 810, Rules of Bankruptcy. However, in order properly to resolve the legal issues before me, I find it necessary to make the following additional findings, which are based on undisputed testimony and documentary evidence.[2]

### Additional Findings Of Fact

Don Neis had no intention of re-occupying the Glenhaven home when he moved out in April, 1979. The temporary order entered by the divorce court shortly after his departure provided that Mrs. Neis would make all mortgage, tax, insurance and oth-

---

2. Generally, where a trial court has failed to make the requisite findings of fact, remand for entry of such findings is the only appropriate course. However, a remand is not always required. Remand is unnecessary "if all the evidence is *documentary* and the appellate court can pass upon the facts as well as the trial court, or if all the facts relied upon to support the judgment are in the record and are *undisputed,* or if the record as a whole presents no genuine issue as to any material fact." (Emphasis supplied.) *Armstrong v. Collier,* 536 F.2d 72 (5th Cir.1976); *see also Pullman Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("where findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue.")

er maintenance payments on the residence. When Neis moved in September, 1979 to the dwelling he owned at 1107 Wells Street in Onalaska, Wisconsin, he took the majority of his personal possessions with him, including furniture and appliances. That property had previously been rented to tenants, but flood damage caused the tenants to seek release from their lease obligations, and Neis experienced difficulty finding new tenants. He remained at the Onalaska residence until February of 1981.

## Opinion

The issue before this court is whether the property at 4062 Glenhaven Drive was the homestead of Don Neis when appellants' judgments were docketed, or whether, instead, Neis had abandoned his homestead interest prior to that time. As the bankruptcy court properly recognized, Wisconsin law governs resolution of the question.[3]

Wis.Stats. § 815.20 provides that

(1) An exempt homestead ... selected by a resident owner and occupied by him shall be exempt from execution, from the lien of every judgment and from liability for the debts of such owner to the amount of $25,000, ... Such exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $25,000, while held, with the intention to procure another homestead therewith, for 2 years.

The language of this section indicates that a homestead must be *occupied* by a *resident* owner if it is to be characterized as exempt. Clearly, Neis did not occupy the Glenhaven Drive residence in June and July of 1980.

The statute expressly protects the interest of an owner who is temporarily absent from his homestead with the intent to return, but the bankruptcy court made no finding, and the record would support no finding, that Neis intended to return. In fact, Neis specifically testified at trial that he did not intend to return when he moved out in April of 1979.

Unable to avail himself of the statute's express protection, appellee prevailed in the bankruptcy court by fitting himself within the ambit of a line of decisions liberally construing Wisconsin's homestead exemption in favor of debtors who leave their homes because of marital discord or the entry of divorce court orders. I have reviewed the authorities relied upon by the bankruptcy court but do not consider them apposite.

■ I believe the bankruptcy court focused too narrowly upon the circumstances surrounding Neis's departure from the Glenhaven home, and failed properly to consider his situation at the time appellants' judgments were docketed. The record reflects that by June, 1980, appellee hadhomestead in Onalaska, Wisconsin. Under Wisconsin law, an individual can have only one homestead at a time. *Jarvais v. Moe,* 38 Wis. 440, 446 (1875). For that reason, establishment of a new homestead effects the abandonment of a prior homestead. *Id; Plan Credit Corp. v. Swinging Singles, Inc.,* 54 Wis.2d 146, 194 N.W.2d 822 (1972). This consideration necessarily imposes an outer limit on a court's latitude in construing the exemption statute.

The state supreme court stated in *Jarvais v. Moe,* 38 Wis. at 446, that a person may have several houses at once, but one only can be his home at a time. The

---

3. The supreme court for the State of Wisconsin has determined that if property qualifies as the debtor's homestead on the date the creditor's judgment is docketed, the homestead exemption will apply. Property not exempt as a homestead on that date is subject to the judgment lien. *Upman v. Second Ward Bank,* 15 Wis. 449 (1862); *Lueptow v. Guptill,* 56 Wis.2d 396, 202 N.W.2d 255 (1972). Thus, if the Glenhaven property was Neis's homestead in June and July of 1980, his share of the proceeds from its sale is exempt from appellants' liens. On the other hand, if Neis abandoned the property as his homestead, the sale proceeds are subject to appellants' liens.

presumption is that he is at home where he is found living. The presumption may be rebutted by showing his abode temporary, and his home elsewhere.... As a temporary abode is not a home, so a temporary removal from home is not an abandonment of it. But such a removal as gains a new home is an abandonment of the old homestead.

(Citations omitted.)

The *Jarvais* rationale was reiterated by the Wisconsin court in *Plan Credit,* 54 Wis.2d 146, 194 N.W.2d 822 (1972), wherein a debtor who had moved from Wisconsin to a home he purchased in Michigan was not permitted to exempt his Wisconsin property from the claims of creditors. The court determined that the debtor had acquired a homestead in Michigan, and "should not be permitted to have the benefit of another homestead exemption in this state." *Id.* at 152, 194 N.W.2d 822. *See also* Comment, *Establishment and Abandonment of a Wisconsin Homestead,* 1973 Wis.L.Rev. 876.

Don Neis was living in a home he owned in Onalaska, Wisconsin at the time appellants' liens were docketed. He had moved into the house ten to eleven months earlier, and had moved all his personal possessions with him. These facts alone give rise to a presumption that the Onalaska property was his homestead. Neis made no showing that his move to Onalaska was temporary, and the bankruptcy court made no such finding. I have taken as true Neis's testimony that he moved into the house because it had been damaged by flooding and would have been difficult to rent; nonetheless, the fact remains that he was still residing there almost a year later, when the liens were docketed.[4] As a matter of law, Neis failed to rebut the presumption that his homestead was where he was living.

Wisconsin's homestead exemption statute was adopted pursuant to the mandate of Wis. Const. Art. I, Sec. 17. That section provided that "[t]he privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale...." *In re Blodgett,* 115 F.Supp. 33 (E.D.Wis.1953). Wisconsin courts have liberally construed the homestead exemption in favor of debtors. *Schwanz v. Teper,* 66 Wis.2d 157, 163, 223 N.W.2d 896 (1976); *South Central Credit Union v. Bigus,* 101 Wis.2d 237, 241, 304 N.W.2d 148 (Ct.App.1981).

The bankruptcy court correctly recognized that this liberal construction policy is evidenced by the decision of the supreme court for the State of Wisconsin in *Eloff v. Riesch,* 14 Wis.2d 519, 111 N.W.2d 578 (1961). In *Eloff,* the debtor, Riesch, was occupying the property in question with his wife on the day a judgment lien was docketed. Thus, at that time, the property was unquestionably exempt. Subsequently, Riesch left the home, never to return. The issue before the court was whether his departure extinguished his claim to the homestead exemption. The court looked carefully at the facts:

Concededly Edward did not personally occupy the premises after March, 1956. It does not appear that his leaving was excused by any conduct of his wife; that there were any divorce proceedings, nor that his obligations to provide for his wife and children were altered in any way.... To the extent of his interest in the property, he continued to help provide them with a home. *Under these circumstances,* continued recognition of the exemption would tend to fulfill the purpose of the exemption statute.

14 Wis.2d 519 at 524, 111 N.W.2d 578 (emphasis supplied). The court concluded that, in light of the liberal construction principle, the residency and occupancy requirement of the exemption statute was fulfilled *under the circumstances of that case. Id.* at 525, 111 N.W.2d 578.

The bankruptcy court relied heavily upon the *Eloff* decision; however, *Eloff* is distin-

---

4. Neis continued to reside there for approximately five months afterward as well. He then moved back to the Glenhaven home to protect it from vandalism.

guishable from the present case in several key respects. In *Eloff,* the debtor was occupying the property when the judgment lien was docketed. The state supreme court stressed that his subsequent departure did nothing to alter his obligations to support his family; there was no logical reason to deprive him of the protection previously granted by the exemption statute.

Neis stands in marked contrast. At the time appellants' judgments were docketed, he had taken up residence on another piece of property he owned. Divorce proceedings had been initiated, and a temporary order had been entered, effecting a property division and providing, *inter alia,* that his wife would occupy the Glenhaven house with the children, and that she would be responsible for all mortgage, tax, insurance, and other maintenance payments on the residence.

The issue here is not whether the law should be construed to permit the debtor's previously exempted homestead to retain its exempt status, but rather, whether the debtor is entitled to claim a homestead exemption in the first instance. In drawing this distinction, I am particularly mindful of language adopted by the state supreme court in *Plan Credit Corp. v. Swinging Singles, Inc.,* 54 Wis.2d 146, 151, 194 N.W.2d 822 (1972) (quoting 40 Am.Jur.2d, *Homestead,* § 12):

> Although the law creating the homestead right is to be construed liberally in the debtor's favor ... [c]onstruction should not be so liberal as to depart from the plain and obvious meaning of the words used or to confer rights upon persons who have not brought themselves at least within the spirit of the constitutional or statutory provisions, without being supplemented or extended by judicial construction. The homestead claimant is entitled only to that which the statute has conferred upon him; the courts cannot

protect what is not homestead. Homestead exemption laws ought not to be so construed as to give the debtor the power by his own acts to deprive others of rights previously obtained in his property.

On the basis of the facts before me, I cannot agree with the bankruptcy court that *Eloff* disposes of the issue at hand. I therefore turn to the other authorities cited in the memorandum decision. The bankruptcy court relied upon a number of bankruptcy court decisions applying *Eloff* to circumstances such as those presented here. In each case, the *creation* of a homestead exemption, rather than its continuance, was at issue, and the exemption claimant's absence from the homestead was occasioned by marital discord or the pendency of divorce proceedings.

*In re Lumb,* 12 B.R. 862 (Bkrtcy.E.D.Wis., July 23, 1981), involved a debtor who was ordered to leave his family home by a family court commissioner hearing his divorce case. Lumb complied with the order by moving into his parents' home, and when he subsequently filed for bankruptcy, he claimed as exempt a share of the value of the family home. Over the trustee's objection, the bankruptcy court held that because the debtor was "essentially driven from his homestead," he should not be deemed to have forfeited his statutory right to claim the homestead exemption. The *Lumb* court relied upon *Eloff,* and upon *In re Beilke,* No. 71–B–2423 (E.D.Wis., March 20, 1972), in which the bankrupt, Beilke, also vacated his home in voluntary compliance with a divorce court order. Beilke then lived in rented rooms, and when he later filed a bankruptcy petition, he was permitted to claim his family home as exempt.[5] The third case cited by the court below is *In re Bleiler,* Nos. 73–BK–696, 73–BK–697 (W.D.Wis., March 11, 1974), in which the bankrupt voluntarily left her

---

5. In *Beilke,* the court reasoned that the divorce court intended by its judgment to permit Beilke to retain his homestead interest. In the instant case, the bankruptcy court recognized that the reasoning in *Beilke* "is not representative of a traditional analysis of the homestead abandonment issue," but nevertheless considered it indicative of the liberal construction generally afforded homestead claimants.

home because of marital discord and financial problems. When she filed a bankruptcy petition, the court determined that her departure was "involuntary," and therefore permitted her to exempt proceeds from the sale of the home.

The bankruptcy court distilled from these authorities a general rule that where an individual has been "prevented" from occupying a homestead as a result of marital discord or the issuance of a court order, the homestead exemption claim will be permitted. In his memorandum decision, the bankruptcy judge stated:

> If Don Neis was not prevented from occupying the Glenhaven house in June and July of 1980 when their judgments were docketed, then Cameron, Trane and the Mooks each have a lien on Don Neis' share of the net proceeds from the sale of the house. As has been demonstrated by the cases set out above, Wisconsin has adopted a generous standard for the prevention of occupancy in homestead cases. Neis' departure in March due to marital discord and his being ordered by the Family Court Commissioner to remove himself from the property in July are, taken together, sufficient under the Wisconsin cases to prevent his occupancy of his homestead. The *Eloff* and *Bleiler* cases preserved homesteads on far less. Therefore ... the Wisconsin law compels the decision that the Glenhaven house was the homestead of Don Neis at the time judgments in favor of Cameron, Trane and the Mooks were docketed.

I do not believe this rule should be applied indiscriminately. For the reasons stated in the discussion of *Eloff*, above, extension of the *Eloff* decision to cases involving the *creation* of a homestead exemption, as opposed to its *continuance*, represents a further liberalization of the statute's construction. This is not to suggest

that the cases mentioned above are not persuasive; it is only to say that they must be considered in light of the particular facts in this case. Under the facts presented here, I cannot say that application of this "occupation prevented" rule serves the purpose of the homestead exemption statute.[6]

 It may well be true that Neis would not have left the Glenhaven home but for marital difficulties or the entry of a court order. I am sympathetic to his position, but he cannot be permitted to shield himself indefinitely from creditors' liens by pointing to his involuntary departure and ignoring all subsequent developments. At some point, the circumstances surrounding a debtor's departure from the homestead must become irrelevant. I need not decide for present purposes precisely when that point is reached. I hold, however, that in this case where the debtor has moved all his personal belongings to a new property and is the resident owner of that property for almost a year before liens are docketed by his creditors, he must be deemed to have abandoned his prior homestead.

## ORDER

The judgment of the bankruptcy court is REVERSED and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

---

**6.** In at least one regard, Neis's situation is clearly distinguishable from those in *Lumb* and *Beilke*. Lumb moved into his parents' home after vacating the family residence, and Beilke lived in rented rooms. Thus, neither could be considered a "resident owner" of the new premises.