CUDAHY, Circuit Judge.
 

 The debtor, Don Orriel Neis, appeals from a district court judgment, 27 B.R. 985 (W.D. Wis.1983), reversing a final judgment of the bankruptcy court, 17 B.R. 656 (Bkrtcy.Wis. 1982). The bankruptcy court determined that certain property of the debtor qualified for the homestead exemption available under Wisconsin law. The district court reversed, holding that this property did not qualify. We have jurisdiction pursuant to Pub.L. No. 95-598, Title IV, § 405(c)(2), 92 Stat. 2668 (1978).
 
 [1]
 
 We reverse and remand to the bankruptcy court for additional findings of fact.
 

 I
 

 Don and Andrea Neis purchased a house, as joint tenants, at 4062 Glenhaven Drive, La Crosse, Wisconsin, in 1972. They lived in this house together until February 1979 when marital difficulties caused Don Neis to spend part of his time at an apartment in a building which he owned and usually rented out to tenants. In late March, he entered into a year’s lease for an apartment at 1638 Bainbridge Street, also in La Crosse. On April 2, Andrea filed for a divorce. She and their son continued to reside in the Glenhaven house, and in July a temporary order was issued requiring Don to vacate the Glenhaven property.
 

 In September 1979, Don left the Bain-bridge apartment and began to live at 1104 Wells Street, Onalaska, Wisconsin. This was another property which he owned and
 
 *586
 
 usually rented to tenants. Because there had been flooding and he was having difficulty finding a tenant, Don decided that it was economically more reasonable for him to occupy the Wells Street property than to pay rent elsewhere. During the summer of 1980, three judgments were docketed against him in favor of Cameron, Nix, Collins and Quillin on June 11, Anna and Raymond Mook on June 17 and Trane Employee’s Credit Union on July 16.
 

 On November 10, 1980, Don and Andrea Neis agreed on a stipulation which was incorporated in a judgment of divorce entered on November 26, 1980. According to the divorce decree, Andrea was to occupy the Glenhaven house until it could be sold, and the proceeds of the sale were to be divided between her and Don after payment of the mortgage and the crediting of certain expenses to Andrea. The closing of the sale of the house was set for December 31,1980, and Andrea moved out in January. The buyers, however, would not accept title because of the judgment liens against the property. While the parties negotiated an agreement, Don moved back into the house in February 1981 in order to protect it from vandalism and to allow him to rent out the Wells Street property for which he had now found a tenant. On March 11, 1981, he filed a Chapter 7 bankruptcy petition, claiming the homestead exemption allowed by Wisconsin statute in the Glenhaven property. The Glenhaven house was sold on March 31, 1981, and the sale proceeds were placed in an escrow account pursuant to an agreement among Don, Andrea and the three judgment lienholders.
 

 II
 

 The sole issue on appeal both in the district court and here is whether under Wisconsin law a debtor has a right to the homestead exemption permitted by Wisconsin statute in a property which he left because of a pending divorce. Although in the course of these proceedings there has been considerable discussion of Don Neis’ residency status at the various places where he has lived, the relevant moment for determining the availability of the homestead exemption is the time at which the judgments were docketed — that is, the summer of 1980.
 
 Northern State Bank v. Toal,
 
 69 Wis.2d 50, 58, 230 N.W.2d 153, 157 (1975) (property owned but not occupied as a homestead when judgment liens are docketed can be attached even if the debtor later does occupy it as a homestead);
 
 Upman v. Second Ward Bank,
 
 15 Wis. *449, *453 (1862) (when judgment is docketed, it becomes a lien upon the debtor’s real estate, if not then occupied as a homestead; the debtor cannot defeat lien by later moving onto the property and occupying it as a homestead);
 
 Lueptow
 
 v.
 
 Guptill,
 
 56 Wis.2d 396, 403-04, 202 N.W.2d 255, 259 (1972) (date upon which a household must be occupied to' qualify as a homestead is the date upon which judgment is docketed; if the debtor subsequently leaves the house, this does not indicate abandonment of the homestead). Neis’ return to the Glenhaven house in February and March 1981 is not relevant, other than as a possible indication of his intent when he left in February 1979 or at some intervening time, even if he were to attempt to show that he re-established his homestead there during the 1981 occupancy.
 
 [2]
 

 Wisconsin law protects a debtor’s homestead property from judgments to the extent of $25,000:
 

 
 *587
 
 (1) An exempt homestead ... selected by a resident owner and occupied by him shall be exempt from execution, from the lien of every judgment and from liability for the debts of such owner to the amount of $25,000 ... except as otherwise provided. Such exemption shall not be impaired by temporary removal with the intention tb reoccupy the premises as a homestead nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $25,000, while held, with the intention to procure another homestead therewith, for 2 years.
 

 Wis.Stat. § 815.20 (1981). The statute thus requires that an owner be a resident-occupant of the property claimed as a homestead subject to two exceptions: (1) when the owner is temporarily absent with an intent to return and (2) when the house is to be sold with the proceeds intended for the purchase of another homestead. Thus, with respect to these exceptions, the owner’s intent is crucial to a determination of qualification for the homestead exemption.
 

 The statute has been liberally construed in favor of debtors, as typified in
 
 Schwanz v. Teper,
 
 66 Wis.2d 157, 223 N.W.2d 896 (1974), in which the Wisconsin Supreme Court stated:
 

 [tjhere is a strong public policy in this state to protect the homestead exemption. Because of this public policy, homestead statutes are liberally construed in favor of the debtor, and homestead rights are preferred over the rights of creditors.
 

 Id.
 
 at 163, 223 N.W.2d at 899 (citations omitted). The bias of Wisconsin law toward the debtor is also illustrated in
 
 Eloff v. Riesch,
 
 14 Wis.2d 519, 111 N.W.2d 578 (1961), where, although the debtor had left his home, the house was still held to qualify for the homestead exemption because his wife and family continued to live there.
 

 In following this policy, the Wisconsin courts have considered whether the owner was required to leave the home involuntarily, as, for example, by a judicial divorce decree barring him from the home or by economic and personal necessities which operated to expel the owner from the residence.
 
 [3]
 
 In
 
 In re Bleiler,
 
 Nos. 73-BK-696, 73-BK-697 (W.D.Wis. March 11, 1974), the court found that financial and marital difficulties had rendered the debtor’s departure from her home involuntary and so exempted the proceeds from the sale of the home. Finally, in
 
 In re Lumb,
 
 12 B.R. 862 (E.D.Wis.1981), the court held that the debtor was involuntarily driven from his home by court order and did not forfeit the homestead exemption.
 
 [4]
 

 Following these precedents, the bankruptcy court in the present case determined that Don Neis was prevented during the summer of 1980, at the time the judgments against him were docketed, from occupying his Glenhaven home, first by marital difficulties and later by order of the Family Court Commissioner. The bankruptcy court went on to hold that the Glenhaven home was therefore protected from Don’s creditors. Because the statutory language relies, in determining the availability of the homestead exemption, on the owner-occupant’s intent, one may infer that the bankruptcy court made an implicit finding of fact consistent with its conclusion — that is, that Neis’ departure was involuntary; that he intended, if he had been permitted, to return to the Glenhaven house up to the time of its sale and that he did not intend to abandon it as his homestead.
 

 The district court on review reversed the decision of the bankruptcy court and held that the Glenhaven house was not exempt.
 
 *588
 
 The district court accepted the findings of fact of the bankruptcy judge as not clearly erroneous and therefore, following Rule 810 of the Rules of Bankruptcy, held that they could not be disturbed. The district court, however, stated that “in order properly to resolve the legal issues before me, I find it necessary to make the following additional findings, which are based on undisputed testimony and documentary evidence.” 27 B.R. 985 at 986 (W.D.Wis.1983). While recognizing that, when a trial court has not made adequate findings of fact, the usual course for the appellate tribunal is to remand for additional proceedings, the district court relied on the principle that remand is not necessary when the evidence is documentary, the facts are undisputed or the record presents no genuine issue of material fact. Id. at 986 n. 2;
 
 see also Armstrong v. Collier,
 
 536 F.2d 72, 77 (5th Cir.1976) (“Where the [district] court has failed [to make findings of fact], the normal procedure is to vacate the judgment and remand the case for appropriate findings ... [but] a remand is not required ... [when] a complete understanding of the issue may be had from the record on appeal ....); cf.
 
 Pullman-Standard v. Swint,
 
 456 U.S. 273, 285-90, 102 S.Ct. 1781, 1788-91, 72 L.Ed.2d 66 (1982) (determination of intent to discriminate on basis of race is a question of fact; under Fed.R.Civ.P. 52(a), an appellate court commits error when making an independent determination of ultimate fact).
 

 The crucial additional finding of fact made by the district court was that “Don Neis had no intention of reoccupying the Glenhaven home when he moved out in April, 1979.” 27 B.R. 985 at 986 (W.D.Wis.1983). The district court then stated that it was necessary to evaluate Don Neis’ situation during the summer of 1980 (when the judgments were docketed), without focuss-ing unduly on the reasons for, and circumstances of, his departure in February 1979. The court concluded that he had established a new homestead in Onalaska.
 
 Id.
 
 at 987. The instant case was therefore held to be distinguishable from the precedent's in which it had been found that the debtor had not established a new homestead. Since we are remanding this case to the bankruptcy court, we do not find it appropriate or necessary to resolve here the issue of which property qualified for the homestead exemption.
 

 Ill
 

 Based on relevant Wisconsin precedent, including such decisions as
 
 Eloff, Lumb,
 
 and
 
 Bielke, supra,
 
 it seems clear that the issues of abandonment and creation of a homestead are fact-bound questions based primarily on a determination of the owner’s intent.
 

 [T]he statutory requirements regarding establishment and abandonment have been liberally construed by the courts in favor of the debtor, placing great reliance on the debtor’s actions and intent. As a result the court’s view of the facts and surrounding circumstances of each case is characteristically more important in resolution of the ease than is the application of any strict rules.
 

 Wisconsin Homestead
 
 at 892.
 

 When a district court hears an appeal from the decision of the bankruptcy court, it sits as an appellate court. Its authority in such cases is set out in Bankruptcy Rule 810:
 

 Upon an appeal the district court may affirm, modify, or reverse a referee’s judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses.
 

 11 U.S.C. Bankruptcy Rule 810.
 

 Universal Minerals, Inc. v. C.A. Hughes & Co.,
 
 669 F.2d 98 (3d Cir.1981), which involved the abandonment of personal property, illustrates the application of this rule. In that case, the bankruptcy court had found an intent to abandon the property; the district court reversed. In evaluating the determination of intent as a finding of fact and the standard of review appropriate
 
 *589
 
 to the district court, the Third Circuit stated:
 

 A person’s state of mind is a narrative or historical fact, albeit one that often must be determined by drawing inferences from evidence of his conduct and the surrounding circumstances. Drawing such inferences does not, however, require application of a legal standard to historical facts; it demands application of logic and human experience and the inference drawn as to intent is a statement of fact and not a holding of law.
 

 [[Image here]]
 

 The district court did not set aside any of these basic findings .... The district court chose, however, to emphasize other facts not mentioned in the bankruptcy court’s opinion and to draw opposing inferences from the record. In doing so, the district court erred. A reviewing court may not substitute its own findings for those of the primary tribunal merely because it finds other inferences more likely.
 

 Id
 
 at 104 (citations omitted). The Third Circuit thus reversed the district court and reinstated the bankruptcy court’s decision.
 
 See also In re Multiponics, Inc.,
 
 622 F.2d 709, 723 (5th Cir.1980) (“An appellate court may not consider the evidence de novo ... and must be particularly reluctant to disregard a finding based on evaluation of testimony drawing credibility into question”);
 
 Tepper v. Chichester,
 
 285 F.2d 309, 312 (9th Cir.1960) (“the findings of the referee on questions of intent ... are questions of fact, or in some instances, mixed questions of law and of fact, and the findings of the referee ... will not be set aside on anything less than a demonstration of clear mistake in applying the law”);
 
 In re Joe Necessary & Son, Inc.,
 
 475 F.Supp. 610, 614 (W.D.Va.1979) (district court declined to disturb bankruptcy court’s findings of intent as to whether a particular transaction constituted a conditional sale or lease of equipment).
 

 The issue of Don Neis' intent to abandon or create a particular homestead is a question of fact, or of inference to be drawn from facts, for the bankruptcy court to determine. Once such a determination is made, the district court in review may only accept such findings or reject them as “clearly erroneous;” the district court may not accept the findings of the bankruptcy court and then go on to make additional findings having the effect of contradicting the conclusions of the. bankruptcy court.
 

 The district court refers in its opinion to the principle that remand to the trial court for additional fact-finding is unnecessary if all the evidence is documentary, all the facts are on the record and undisputed or the record as a whole presents no genuine issue as to material fact. 27 B.R. 985 at 986 n. 2 (W.D.Wis.1983),
 
 citing Armstrong v. Collier,
 
 536 F.2d 72 (5th Cir.1976);
 
 Pullman-Standard v. Swint,
 
 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). While we do not, in general, disagree with this principle, we do question the district court’s evident conclusion that there was no dispute as to the facts or that the record presented no genuine issue of material fact. The question of Don Neis’ intent was hotly contested in the bankruptcy court and in the district court and is again contested on this appeal.
 
 [5]
 
 Further, a determination of intent is necessarily based both on inferences to be drawn from the conduct of the individual whose
 
 *590
 
 intent is in question and on his testimony. The bankruptcy judge had the opportunity to observe Neis throughout the proceedings and on the witness stand and to evaluate his credibility. It is precisely because of this unique opportunity that the ability of the reviewing court to disturb findings of fact is limited.
 

 The bankruptcy court’s decision that the Glenhaven property did qualify as Neis’ homestead implies a finding that Neis intended to maintain that house as his homestead and that he intended to return to it, if he were able to do so, up until the time of its sale. The district court’s decision that the Glenhaven house was
 
 not
 
 Neis’ homestead indicates a finding of intent to the contrary and is not consistent with the implicit findings of the bankruptcy court. It is therefore necessary to remand this case to the bankruptcy court for a clearer and more explicit finding of fact as to Neis’ intent in abandoning or maintaining his homestead in the Glenhaven property or in creating a new homestead in the Wells Street property in Onalaska. Intent, of course, must be determined in relation to the surrounding exigencies.
 

 While the bankruptcy court’s conclusion in light of the factual record, the trial testimony and applicable Wisconsin precedent is not unpersuasive, its findings of fact are not sufficiently clear or complete under the particular circumstances presented here. We therefore conclude that the district court erred in engaging in additional fact finding and in basing its decision on these additional facts. We reverse the judgment of the district court and remand to the district court with instructions to remand to the bankruptcy court for additional findings of fact with respect to Don Neis’ intent in creating or abandoning his homestead rights and for other proceedings not inconsistent with this opinion.
 

 [1]
 

 . The appellate jurisdiction provided in 28 U.S.C. § 1293(b), Pub.L. No. 95-598, Title II, § 236(a), 92 Stat. 2667 (1978), is not applicable until April 1, 1984. Section 405(c)(2), Pub.L. No. 95-598, Title IV, 92 Stat. 2682, grants the same appellate authority during the current interim period.
 

 [2]
 

 . Appellees argue that a second critical point was reached when Andrea and Don Neis were divorced in November 1980 and that the liens would have attached to the Glenhaven property when it ceased to be occupied by Don Neis’ family (at that time his ex-wife and his son).
 
 Moore v. Smead,
 
 89 Wis. 558, 568, 62 N.W. 426, 430 (1895); Appellees’ brief at 8. In
 
 Moore v. Smead,
 
 however, the court held that judgments docketed against a debtor attach to the land immediately without need for further enforcement proceedings if the debtor has
 
 previously
 
 abandoned it as his homestead (before the judgments were docketed). The issue of abandonment, as determined by the debtor’s intent, and its temporal relationship to the docketing of the judgments are not addressed in
 
 Moore v. Smead. Id.
 
 at 566-68, 62 N.W. at 429-30. Given the perhaps questionable logic of appellees’ argument with respect to the time of divorce, it is not necessary for us to decide this point on appeal.
 

 [3]
 

 .
 
 See also
 
 Comment,
 
 Establishment and Abandonment of a Wisconsin Homestead,
 
 1973 Wis. L.Rev. 876 [hereinafter cited as
 
 Wisconsin
 
 Homestead]. In discussing the relevant factors in determining abandonment of a homestead, the author states: “[i]t is logical to assume however, that a person who leaves out of necessity leaves in spite of a desire to stay and would naturally intend to return as soon as circumstances would permit.”
 
 Id.
 
 at 886.
 

 [4]
 

 .
 
 In re Lumb
 
 specifically holds, and perceives the Wisconsin legislature as intending, that the homestead exemption may be claimed by unmarried joint owners as well as by divorced joint owners. 12 B.R. at 867.
 

 [5]
 

 .
 
 See, e.g.,
 
 Neis’ claim both in testimony in the bankruptcy court and on appeal that “he did not intend to abandon the Glenhaven house .... He did not want to make any impression he was abandoning the Glenhaven house after his wife and family moved out .... Ñor did he ever intend to claim the Wells Street property as his homestead.” Appellant’s brief at 9; Tr. 36-37, 41, 22.
 
 Cf.
 
 Appellees’ assertion: “He had not lived at Glenhaven Drive since March, 1979, over a year before the judgments were docketed. He had left the Glenhaven property at that time with no intent of ever returning to reoccupy the premises.” Appellees’ brief at 6. The importance of observation of the witness’ demeanor for purposes of determining credibility is particularly critical when the testimony involves intent as to past acts, as appellees also emphasized. “Although Mr. Neis testifies that he never intended to abandon his homestead, testimony of such intent should be accorded little weight after intervening occurances [sic] makes [sic] such statements advantageous to the property owner.” Appellees’ brief at 7.