In re Thomas L. DeLONG Appellee.

Vermillion State Bank, Plaintiff–Appellant,

v.

Thomas DeLong, Defendant–Appellee.

No. 04–C–0754–C.

United States District Court, W.D. Wisconsin.

April 21, 2005.

James W. Flory, Michael J. Iannacone, for Plaintiff–Appellant.

Galen W. Pittman, Galen W. Pittman, S.C., La Crosse, WI, for Defendant–Appellee.

## OPINION AND ORDER

CRABB, Chief Judge.

This is an appeal of a decision of the United States Bankruptcy Court for the Western District of Wisconsin, brought pursuant to 28 U.S.C. § 158(a). Defendant-appellee Thomas DeLong secured two loans from plaintiff-appellant Vermillion State Bank to purchase equipment for his excavation business. Unable to keep his business afloat, appellee filed for bankruptcy in February 2003; the bank opposed discharge of the loan. The bankruptcy court granted the discharge, concluding that appellee had not (1) secured the loan by making false representations under 11 U.S.C. § 523(a)(2)(A); (2) willfully and maliciously injured appellant under 11 U.S.C. § 523(a)(6); or (3) hindered, delayed, or defrauded appellant under 11 U.S.C. § 727(a). Appellant brings this appeal, arguing that the bankruptcy court's conclusions under each statutory provision were erroneous.

After reviewing the record, I conclude that the bankruptcy court had an adequate basis for concluding that neither § 523(a)(2)(A) nor § 523(a)(6) precluded discharge. However, the court's reasoning with respect to appellant's § 727(a) claim is unclear. Its findings suggest that it believed that appellee had both a legitimate reason and a fraudulent one for buying a trailer for his girlfriend less than a year before filing for bankruptcy. Because of this incongruence, I will remand the issue to the bankruptcy court for additional clarification.

From the briefs submitted by the parties and from the record on appeal, I find that the bankruptcy court had before it the following evidence.

## FACTS

In 1997, appellee Thomas DeLong established an excavating and tree service company. After operating the business for three years, on November 20, 2000 he obtained a $25,082.00 loan from appellant Vermillion State Bank for the purchase of new equipment. In October 2001, appellee's business was in decline. At the hear-

ing, appellee testified that such a downturn was normal during winter months and that he did not believe this seasonal decline put his business in jeopardy.

In January 2002, appellee approached Neal Ahrenstorff, one of appellant's commercial lenders, about the possibility of securing a second business loan. Appellee testified that he wanted a second loan so that he could purchase a new piece of equipment called a "Hough loader." During their conversation, Ahrenstorff asked appellee about the amount of money he had earned in the preceding year. According to Ahrenstorff, appellee indicated that he had earned $60,000.00 in net income in 2001. Appellee testified at his deposition that he told Ahrenstorff that he had grossed $60,000.00 in 2001.

In addition to inquiring about appellee's income, Ahrenstorff asked appellee whether he would be interested in purchasing a "belly dump" that the bank had recently repossessed. Appellee testified that, although he had not planned on buying a belly dump, he believed he could find a use for it. He agreed to include the price of the belly dump in the loan agreement.

On January 23, 2002, appellant approved the second loan in the amount of $21,500.00. This amount was added to the balance of $21,160.80 on the first loan for a total outstanding balance of $42,660.80. Under the terms of the second loan, appellee received $13,000 in loan proceeds and the belly dump, which the bank had valued at $8,500. The parties agreed that appellee would use the $13,000 to purchase a Hough loader.

According to Ahrenstorff, appellant made the decision to extend the second loan after considering the following information: appellee's personal financial statements from 1997 and 1998, records indicating appellee had completed his home mortgage payments, appellee's payment history with respect to his first loan, a list of appellee's business assets that he had provided in connection with the first loan and appellee's oral statement that he had earned $60,000.00 in 2001. Ahrenstorff did not review appellee's 2001 personal income tax return, which indicated that he had only $28,550.00 in gross income and a net loss of $831.00 in 2001. When asked at trial about the discrepancy between his statement to Ahrenstorff and his income tax return, appellee testified that he had done poor record keeping, that he had little understanding of tax law and that he may have neglected to provide complete information to H & R Block, the company that prepared his income tax return.

After securing the second loan, appellee managed to obtain and rehabilitate a used Hough loader for between $6,000 and $7,000. In response to questions at the bankruptcy hearing about why he had requested a $13,000 loan to buy a Hough loader that ultimately cost less than $7,000, appellee testified that he had not anticipated that he would be able to find such a bargain. He said that before securing the second loan, he had seen advertisements in industry magazines for Hough loaders priced about $13,000.

Appellee failed to make the first monthly payment of $1,000 on the second loan when it became due on February 15, 2002. After ten days had passed, appellant removed $1,000 from appellee's checking account and an additional $50 late fee, as it was authorized to do under the loan agreement.

Two weeks later, appellee transferred $35,500 from his checking account at the bank to Security National Bank. This transfer reduced appellee's balance at Vermillion State Bank to $5,316.70. Over the remaining weeks in March, appellee transferred all but $911.28 from his checking

account with appellant to his account at Security National. When asked at the hearing whether he owed any money to Security National Bank, appellee testified that he did not.

Over the next month, appellee made two significant purchases. On March 29, 2002, he purchased a house trailer for $3,000.00 and titled it in his girlfriend's name. At the bankruptcy hearing, he testified that he gave the trailer to his girlfriend as compensation for services that she had performed for his business. He said that she traveled frequently to obtain parts and often helped by digging ditches. In response to questions about why he had made the purchase, appellee testified, "We liked getting away from Wisconsin for the winter, you know, and that's why she wanted that so I bought it. I figured she deserved—she—if I'd have paid her by the hour it would have been a lot more." On April 1, 2002, appellee and his girlfriend moved the trailer to Arizona and lived in it.

The purchase of the trailer did not have a significant impact on appellee's financial situation. Before appellee purchased the trailer for his girlfriend, he had an account balance of $22,920.03 at Security National Bank, owned a house valued at $31,000.00 on the bankruptcy schedule, a car valued at $1,500.00 on the bankruptcy schedule, and several pieces of excavating equipment. After purchasing the trailer, appellee maintained cash savings of $19,920.03 and continued to own his house, car and business equipment.

On April 26, 2002, appellee bought a second trailer for $5,500.00. He testified that he had intended to give this trailer to his sister, but when his sister did not move to Arizona as planned, he sold it for $9,600.00. According to appellee's testimony, expenses related to advertising and

repairs reduced his profit on the sale from $4,100.00 to $900.00.

By the last week of April 2002, appellee's business fortunes had not improved and he realized that he would be unable to continue his business. Shortly thereafter, appellee sold his excavating equipment at an auction for $15,000.00, which he used to reduce his loan balance. Ahrenstorff testified that until two days before the auction, appellant was unaware that appellee was holding an auction and that it would receive the proceeds.

On February 18, 2003, appellee filed a Chapter 7 bankruptcy petition. Appellant filed a complaint objecting to the discharge of the outstanding loan balance on July 29, 2003, alleging that 11 U.S.C. §§ 523(a)(2)(A), 523(a)(6), 727(a)(2) and 727(a)(5) precluded the discharge of appellee's outstanding loan balance. The bankruptcy court held an adversary hearing on the objections on June 10, 2004.

## BANKRUPTCY COURT'S DECISION

The bankruptcy court concluded that none of the provisions relied on by appellant barred discharge of the loan balance. First, it found that appellee's comments to Ahrenstorff about his 2001 income and reason for obtaining the loan did not preclude discharge of the loan balance under 11 U.S.C. § 523(a)(2)(A) because appellee did not make either statement with the intent to deceive appellant. Second, the court found that appellee's rapid shift of assets from appellant to Security National Bank in March 2002 did not preclude discharge under 11 U.S.C. § 523(a)(6) in light of appellee's willingness to volunteer his equipment for an auction to benefit the bank, which suggested that he had never intended to convert the bank's money into his own. Third, the court found that appellee's purchase of a trailer for his girlfriend did not preclude discharge under 11

U.S.C. § 727(a)(2). According to the court, although appellee may have put the trailer in his girlfriend's name to "avoid trouble," it "seems like it was compensation for services rendered." Additionally, the court noted that the purchase of the trailer did not significantly reduce the amount of assets available to appellant. Fourth, the court found that appellee's explanation regarding the distribution of his assets was satisfactory and did not warrant denial of discharge under 11 U.S.C. § 727(a)(5). (Appellant does not appeal the bankruptcy court's ruling on this issue.) The court stated that appellee provided an adequate summary of what had happened to his money and business equipment.

## DISCUSSION

### A. *Standard of Review*

■ Rule 8013 of the Federal Rules of Bankruptcy Procedure states: "On an appeal, the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." A bankruptcy court's factual findings are reviewed for clear error; its conclusions of law are reviewed de novo. *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994).

### B. *11 U.S.C. § 523(a)(2)*

■ 11 U.S.C. § 523(a)(2)(A) prevents a debtor from discharging "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To oppose a discharge on the ground that it would violate § 523(a)(2)(A), a creditor must show that (1) the debtor obtained the money through representations that he either knew were false or made with such reck-

less disregard for the truth as to constitute willful misrepresentation; (2) the debtor made such representations with the intent to deceive the creditor; (3) the creditor actually relied on the false representations; and (4) its reliance was justifiable. *Field v. Mans,* 516 U.S. 59, 72–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Mayer v. Spanel Int'l Ltd.,* 51 F.3d 670, 673 (7th Cir.1995).

■ Appellant's position is that § 523(a)(2)(A) precludes discharge of the loan because appellee secured the loan by misrepresenting his income and by misrepresenting the purpose of the loan. As to his income, appellant believes that appellee told loan officer Neal Ahrenstorff that he had either a gross income or a net income of $60,000 in 2001, when his tax records indicated a gross income of only $28,550.00 and a net loss of $831.00 during that year. Appellant argues that appellee's comments about his income constitute a misrepresentation and that the bank relied on this misrepresentation in determining his eligibility for a loan.

The bankruptcy court did not address the elements of § 523(a)(2)(A) individually. Instead, it appears that the court found that the claim failed because appellee lacked the intent to deceive the appellant. The court stated, "[O]n balance I think he may have thought that he actually took in $60,000." This finding does not amount to clear error. Evidence presented at the hearing showed that appellee did not receive income on a regular or predictable schedule. In addition, appellee testified that he maintained poor records and did not prepare his 2001 income tax return personally. In light of this evidence, the bankruptcy court could reasonably conclude that appellee believed that he earned $60,000 in 2001 and that he did not intend to deceive appellant.

■ As to appellee's alleged misrepresentation of his intention to use the $13,000 in proceeds for personal purposes rather than business purposes, appellant notes that appellee purchased only one piece of equipment, the Hough loader, and that it cost only about half the amount of the loan he had requested. The bankruptcy court found that § 523 did not preclude discharge because appellee lacked the intent to deceive appellant. The bankruptcy court stated, "I think he thought he might be staying in business and he didn't intend to deceive, that he really—in fact, we have evidence he went ahead and made the deal on the belly dump. He did in fact buy and rehab a loader. So it looks like he did intend to remain in business and borrowed the money for that purpose."

The bankruptcy court's findings do not amount to clear error. According to testimony from Ahrenstorff, appellant anticipated that appellee would use $13,000 from the second loan to purchase a Hough loader. Appellee purchased the loader for between $6,000 and $7,000. The fact that appellee used only part of the loan to purchase the loader is probative of his intent, but does not show conclusively that he intended to borrow more than he needed for equipment purchases. The bankruptcy court believed appellee's testimony that he thought initially a Hough loader would cost $13,000 and that he was able to obtain and rehabilitate one for only half that amount. In addition, the bankruptcy court believed appellee's testimony that at the time he applied for the second loan he intended to remain in business. Giving the required "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses," *In re Weber*, 892 F.2d 534, 538 (7th Cir.1989) (quoting Fed. R. Bankr.Proc. 8013), I conclude that the bankruptcy court did not err in ruling that appellee had not misrepresented his intentions regarding the second loan.

### C. *11 U.S.C. § 523(a)(6)*

■ 11 U.S.C. § 523(a)(6) prevents discharge of "any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not just a deliberate or intentional act that leads to injury." *Kawaaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "Fraud, of course, is an intentional tort and § 523(a)(6) makes many intentional torts nondischargeable." *In re Gulevsky*, 362 F.3d 961, 963–64 (7th Cir.1998).

■ Appellant points to appellee's withdrawal of $39,905.42 from his account at Vermillion State Bank in March 2002 as evidence that appellee intended to "willfully and maliciously" injure the bank. Appellant argues that the purpose of the transfer of funds was to keep the money "out of the reach" of appellant. However, the bankruptcy court found that appellee did not act to injure the bank "willfully and maliciously" by transferring the contents of his account to another bank. The court concluded that if appellee had wanted to take creditor's money and "run," he would not have "[made] the [business assets] available for liquidation at the auction for the bank."

Clearly, appellee's actions warrant suspicion. He failed to make his first payment under the second loan agreement, moved $35,000 from his account with appellant two weeks after appellant deducted the first loan payment from his account, reduced the account balance to under $1,000 by the end of March 2002 and then failed to make any payments on the second loan thereafter. From the bankruptcy court's perspective, though, appellee's actions in the wake of the transfer eliminated

any doubts regarding his motives. Rather than trying to hide or protect assets from appellant, appellee organized an auction to repay some of his debt to appellant. It was permissible for the bankruptcy court to infer from this activity that appellee's earlier mind set must have been benign rather than malicious.

### D. *11 U.S.C. § 727(a)(2)(A)*

█ In contrast to 11 U.S.C. § 523, which prevents discharge of only a particular debt from the moving creditor, 11 U.S.C. § 727 allows a court to deny the debtor's discharge entirely so that the debtor's assets and future income remain subject to the claims of all creditors. Epstein, Nickles, & White, 2 *Bankruptcy: Practitioner Treatise Series* § 7–17 (1992). 11 U.S.C. § 727(a)(2)(A) entitles individual debtors to a complete discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ... property of the debtor, within one year before the date of the filing of the petition." In order to prevent discharge under § 727(a)(2)(A), a creditor must prove that (1) the act complained of was done within a year before the date of filing the petition; (2) the act was done with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the bankruptcy code; (3) the act was carried out by the debtor or his duly authorized agent; and (4) the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of the acts to be done. 11 U.S.C. § 727(a)(2); *Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir.2002).

Appellant contends that appellee's March 2002 purchase of the trailer he titled in his girlfriend's name satisfies the requirements necessary to prevent discharge under § 727(a)(2). The facts show that three of the four elements have been met. First, the transaction occurred on March 29, 2002, less than a year before appellee's February 18, 2003 bankruptcy petition. Second, the transaction was executed by appellee. Third, it involved a transfer of property. 11 U.S.C. § 101(54) of the bankruptcy code defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." In this case, appellee purchased a trailer with his own money and entered his girlfriend's name on the title. Clearly, this fits within the bankruptcy code's "broad" definition of a "transfer." *McWilliams*, 284 F.3d at 793–94.

█ The only issue is whether appellee purchased the trailer with intent to defraud the bank. "Though actual intent is difficult to prove, it may be shown through circumstantial evidence." *McWilliams*, 284 F.3d at 791. The Court of Appeals for the Seventh Circuit has identified six factors to consider when evaluating whether a debtor transfers property with the intent to defraud a creditor: (1) a lack or inadequacy of consideration; (2) a family, friendship, or close associate relationship between the parties; (3) retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or conduct after the incurring of debt, onset of financial difficulties or pendency or threat of suit by creditors; and (6) the general chronology of the events and transactions under inquiry. "If the appellant can show that one or some of these factors are met, this creates a presumption of intent to defraud, establishing [the creditor's] prima facie case and shifting the burden to the [debtor] of demonstrating that he lacked

fraudulent intent." *Id.* (quoting *Pavy v. Chastant,* 873 F.2d 89, 91 (5th Cir.1989)).

In concluding that appellee had not transferred property with the intent to defraud the bank, the bankruptcy court did not consider all six factors set out by the Court of Appeals for the Seventh Circuit. First, the bankruptcy court did not decide whether appellee retained possession, benefitted from the trailer or used it after the transfer. Second, the court made no findings whether there was a pattern or series of transactions after appellee obtained the second loan that would indicate that the purchase was part of a scheme to defraud the bank. Third, it made no findings about the significance of the general chronology of events in this case. Additionally, although the bankruptcy court noted that appellee transferred the trailer to his girlfriend, it did not indicate whether this or any other fact created a presumption of intent to defraud.

The reasoning that the court did provide is unclear. First, it stated, "I think [appellee's] girlfriend probably deserved the [trailer]. He probably did put it in her name to avoid trouble but it seems like it was compensation for services rendered." Earlier it stated that he found "problematic" appellee's testimony that his girlfriend had earned it because she had done a lot of work for appellee and had not been paid, when he had not disclosed this on his Statement of Financial Affairs. These statements suggests that the court was finding that appellee might have had both a legitimate reason for transferring the trailer to his girlfriend and a fraudulent reason for doing so. The second half of the bankruptcy court's analysis is troubling as well. The court stated, "[T]o warrant denial of discharge under 727(a)(2), the transfer must be actual transfer of valuable property which reduces assets available to creditors. And I can't see that

happened here, even especially with these trailers as they weren't of much value and on the one he disposed of it and there was really pretty [sic] of a wash for him." To the extent that the bankruptcy court was suggesting that profits from the sale of appellee's sister's trailer cancelled out the purchase price of appellee's girlfriend's trailer, the bankruptcy court committed error. Appellee testified that he sold his sister's trailer for a $900.00 profit and that he purchased the trailer for his girlfriend for $3,000.00. This is not a "wash." Appellee effectively reduced the amount of money available to creditors by $2,100.00.

 Contrary to the bankruptcy court's suggestion, the "low value" of the girlfriend's trailer does not resolve the claim under § 727 in and of itself. True, a bankruptcy court may consider the value of the transferred property in evaluating whether the transfer was made with fraudulent intent. *In re Dennis,* 330 F.3d 696, 702 (5th Cir.2003). Once it determines that the debtor had such an intent, however, it is irrelevant whether the transfer reduced the amount of assets available to the creditor. *Matter of Smiley,* 864 F.2d 562, 569 (7th Cir.1989) ("[A] fair reading of the statute makes it clear that so long as there is *intent* to hinder, delay, or defraud, in combination with an act such as a transfer, then the appellee should be denied the privilege of discharge. The statute does not provide that the appellants must have, in fact, been hindered, delayed, or defrauded.") Some of the bankruptcy court's comments suggest the court thought that appellee had a fraudulent mindset.

Because it is unclear whether the bankruptcy court believed appellee purchased the trailer for his girlfriend with fraudulent intent, I will remand this case to the bankruptcy court for a second look. *In re Neis,* 723 F.2d 584, 590 (7th Cir.1983) (where bankruptcy court's findings of fact

are not sufficiently clear or complete, proper course is to remand case for additional findings of fact).

## ORDER

IT IS ORDERED that the decision of the United States Bankruptcy Court for the Western District of Wisconsin to dismiss plaintiff-appellant Vermillion State Bank's adversary complaint objecting under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) to the dischargeability of a debt and discharge is AFFIRMED. FURTHER, IT IS ORDERED that the decision of the United States Bankruptcy Court for the Western District of Wisconsin to dismiss plaintiff-appellant Vermillion State Bank's adversary complaint objecting under 11 U.S.C. § 727(a) to the dischargeability of a debt and discharge is VACATED. This case is REMANDED to the bankruptcy court for additional proceedings in conformity with this opinion.